One of your honors, may it please the court, my name is Dennis Price. I support the incumbent, Arthur Gray. I just want to alert the many new students in the audience today. We're going to talk a lot about civil procedure and constitutional standing requirements. These things they might find terrible sexy in class, but I want to remind them that it's important and we're going to try to demonstrate why in here. I think civility is important. They are important. There's three of the main issues you're going to bring up. I'm not sure if it's sexy, so go ahead. Well, I'm going to expect you to change your minds. The pleading requirements of Rule 8, they're important. The effect of mootness determinations in various different statutes, they're important. And finally, the importance of whether or not this court considers a jury to try and correct the defects of the lower court decisions is another thing that we're going to discuss here. Well, I'd like you to discuss first why didn't you amend your complaint? Yeah, I think we can discuss that. I want to know why you didn't amend it. It would be so much easier after putting in the complaint what you did and then going out and having the discovery that you had to take whatever your professional said were the problems and amend your complaint to allege them rather than force me, as you just said, to be the jury and now try to decide whether some of this language you now want fits in the language you then had. Why didn't you just amend? It'd be easy. Why don't I just adopt an order straight laced? You don't amend, you get nothing. That's exactly what we had when we were talking about Oliver. Oliver says, after discovery, the complaint must be amended to give the defendants fair knowledge, fair notice of the specifics. And if that were the rule, and I suggest it's a good one, I wouldn't be digging through here making your arguments for you. And that's one thing. However, I don't necessarily think this is the same as Oliver. And the reason we didn't amend the complaint is when we sent our expert there. I'm not just amending it. It would have been so easy. You're trying to get me now just to look at this inaccessible, unusual restroom facilities and showers. And then I'm to take that and compare it to the other languages and then put in your expert report and see if it makes sense. See if it is that, if it's notice of that. It would have been so much easier if you had just amended it. There's no question there would be notice. You're right, Your Honor. It would be easy. But really, now what you're going to require is every appellate. First of all, the district court looked at it and said, no, it doesn't measure up. They are not the same, and I'm not allowing it. Now you're saying an appellate court has got to go through this and look and see if there's notice based on some vague statement in two documents. And it would have been so easy if you'd amended the complaint. Yes, Your Honor, it would have been. However, it was like the notice requirement is for the defendant in the case, and here the defendant had what it's for. But it's so much easier if he stands up and said, no notice, I didn't know. That's not enough. I can't do that. The district court said, not enough notice. And if this were a discretionary decision, you'd be dead. Because then I'd have to say that it's abuse for what the district court said. But because it's the no vote, I am stuck with trying to decide whether the six-inch strike side clearance of the bedroom door to the corridor due to the sink location equals inaccessible and unusual restroom facilities. Yes, Your Honor, and my apologies for that. If you need to apologize, I'm saying, why don't you just adopt your rule? If you don't amend, you get nothing. Because I think that would violate an awful lot of precedent, both at this Court's level and the Supreme Court, especially in this Court's decision in Johnson v. State of California, which specifically says that in civil rights cases, in particular in classic cases, the flow cleaning requirements of Rule A do not require heightened scrutiny, and they're particularly supposed to be reviewed liberally. The defendant had a measure. Based on those cases, I let a plaintiff's lawyer get away with doing absolutely nothing, and I have to do the work for him. Your Honor, I don't believe so. I don't believe that's a fair assessment of the case. That is exactly what I'm required to do here. We're not asking for the additional barriers from our expert to be included in this case at all. We didn't appeal that. We did have our expert take a look at them and look if they were going to be corrected by the defendants. But the actual barriers that we've flagged are well-plagued. They meet the rule in standing requirements, or they're really exceeding requirements, as we understand them. As I believe all of our legal counsels agree, they meet Rule A because we never amended the complaint. Rule A is a subpoena rule for a complaint. If somebody's judgment presupposes that we have had a complaint, an answer or a motion to dismiss, we've had discovery, and now we have the issues that then there's a certain burden shifting. But unless you satisfy Rule A by amending the complaint, then we can't perform this analysis at this point. I'm not sure the court needs to perform that analysis. I mean, frankly, we file these complaints, and frankly a lot of these aren't allowed to amend the complaint until after we have these expert inspections. The courts look at our cases. They say they're, you know, they need to be fled. And we look at the way the case is actually litigated here. The defendant had no trouble answering the complaint. They had no trouble doing 17 months of discovery. They had no trouble following around our expert at the expert site inspection. And they apparently had no problem correcting the defects because they believe that is the standard. Whether they had no trouble following around your expert or whether they had no trouble doing discovery, the standard is did you amend the complaint and give notice? And if you don't suggest that you amended the complaint, which you didn't, then I'm stuck with saying whether this language fits in the notice of the only complaint I have in front of me. Isn't that true? Yes, Your Honor. I really just don't think it is. They don't see six-inch spry clearance in the bedroom door to the corridor due in the same location in your complaint. And it's not there because that's not a short and plain statement as required in a rule. It's not requiring amendment pleading. Oliver doesn't require amendment pleading. All of it stands for is violation of barriers. I mean, we have gone through this time and time again. First of all, plaintiffs came in and they said, well, we went in and we just looked at what happened there. And now we're going to allege what happened there. But we're also going to allege those we've never thought about. And there were some who said, no, you're not. If you're not alleging them in the beginning, you're not going to do it. We came through that. We said, no, plaintiffs shouldn't have to do that. The next thing we said was, okay, now you can allege a normal allegation, widespread allegation, as you did. And after that, go discover and then amend your complaint. And then we'll know exactly what the defendant ought to deal with. Well, you were able to go out and discover. You had your expert. You went out and did it. But you never amended the complaint. No, Your Honor, we didn't. But, again, we weren't looking. So we got those additional claims out of those cases that you brought up, rather than claims. So the sixth-in-stride clearance of the bedroom door to the corridor, due to the same location, comes in which part of the complaint is alleged? Well, that would have been an additional barrier if you added it in. But our barrier is because they existed. No, the clearance is a barrier. It is a barrier. It absolutely is a barrier. And I think that kind of goes through a bunch of barriers. And the hospital knows what they have to address is correct before the motion of summary judgment. If we can add it in that, that would have been an additional barrier, but it doesn't do anything to the slope issues that exist now. I'll ask you this. You did allege slopes leading into the medical facility. But we're not talking about that. That's correct, Your Honor. But we're not asking for the additional barriers. We added in that stuff, but we're appealing. Oh, you don't want any of those additional barriers that were encountered in patient suite 2218 added. The additional barriers that were found in Mr. Bishop's declaration are not being added. We're not appealing them. That's not what we're here to do. So are you adding the issues that were based on the East Lobby men's room? To the extent that the men's rooms are the only men's rooms that were identified in this case, we're not looking to add anything additional today. We're appealing the court deciding that the issues that we actually pled were insufficient. I guess I'm trying to figure out, given what you have here, whether any of these additional things would be added or would be included. Nothing additional is looking to be added here, Your Honor. We're not looking to add anything. The one here I know in the men's restroom in the room is 24 feet, 24 inches above the floor is not added. We're not looking to add any of those. I'll see bathrooms would be covered by that. Each and every bathroom in the facility, I would identify which bathrooms do not satisfy that requirement. That's correct. We only have the bathrooms, and those were determined in discovery. The parties were well aware of the bathrooms that Mr. Gray encountered. We're not asking for anything additional other than what he encountered. The whole purpose today is that the district court struck our existing process of action, our existing barriers. All you're doing really is going to the second issue, which is can you still pursue the issues the district court did not strike? I believe so, yes. So we're really only dealing with the second issue, whether the two remaining claims are moved. Is that all you're appealing? With the exception of a tieback because of the fact that there are damages. A tieback, are we talking about? Well, the way I read your brief, Title II and Section 5504 of the Rehabilitation Act all allow for compensatory damages. So even those things you're talking about is, do we get any compensatory damage as it relates to the Title II claims? And because the district court didn't give you a chance to even talk about that and said these are all Title III claims and objective relief, you still want to pursue the claims as to the two remaining claims. Well, and I believe the three that were struck were also improperly struck because they determined that he didn't have standing and that standing issue was also incorrect because he still had damages on Title III, and you can refer to it on that because, I'll be fair, this is a new idea for reading your brief. I didn't get this. I understand, Your Honor. Mr. Gray encountered barriers inside the neonatal unit and he did not have standing according to the court to seek conjunctive relief, and that's not under the Luget case. That's fine. No, we're not challenging that. But that didn't change his entitlement to damages for those barriers that he encountered. They said the requirements for Title III barriers, you now want to get a damage relief for that the district court struck. The barriers inside of the neonatal unit, the ramps, those were all struck. The drinking dumps were in the original complaint. Only the original complaint. They're seeking no additional damages, no additional conjunctive relief as a result of our expert's report. Only the things that were inside the complaint, only the things that we actually claimed in our summary judgment. Okay, so what are the three neonatal units before me again? I missed this argument. Mostly under your brief. The drinking fountains. The drinking fountains. The ramps. The restrooms. And the seats that were in the neonatal unit. The restrooms and the patient rooms? The restrooms and the rooms that he actually encountered. We're talking in the patient rooms? Yes. Those are the three. The drinking fountains, the ramps, and the restrooms, and the patient's rooms that he encountered. Oh, as well as the seats in the neonatal unit, yes. Say what? The seats in the neonatal unit that he was there on another day. The seats in the neonatal? Yes. And we called it a DQ at the neonatal unit. That was alleged. Those were in the original. Where were they alleged? I didn't see anything about seats. Unless the drink was the ones that he encountered. The drinking fountains are inaccessible. I got inaccessible public restrooms. I got inaccessible, unusable, unusable restroom facilities and showers in the patient rooms. I don't find your sinks. Let me find the exact page for you here. It was mentioned and let's see. It looks like in the record volume 2, page 93, lines 19 to 20, the seats in the neonatal unit were only operable by using foot cuddles, and that's in the original complaint. That's in the original complaint. I don't have to read it. I didn't see it. I got inaccessible, unusual restroom facilities and showers, inaccessible public restrooms, excessive slopes, drinking fountains, and all of the barriers, which I can confirm after I go have an inspection. Yes. And I think I want to make sure we address the final issue here, and that's that the deliberate indifference was never briefed. And I want to make sure that we have a chance to talk about it. I understand what you're saying is the district court just skipped right to our Title III. It didn't give me a chance to talk about Title II, and therefore I ought to get some damages. And that's where we're going to deliberate indifference. I think we would have a trial about whether it's deliberate indifference or not. That's exactly what I'm saying. I don't think that trial should happen here today. Well, we're not going to have it. I would get a good period out there. I would like to have a remodel if I may. Thank you. Good morning, Honorable Justices. I apologize. Honorable Judges, there's no justice in the Ninth Circuit. Yeah, I don't think so. There's not enough out there who didn't catch that comment. That was a good one. It was. We're judges on this court because there is no justice in the Ninth Circuit. I'm not sure that I heard it. You got it. But I knew they didn't catch it because they didn't give me the response. They now did. Judge Baez is just mad to say that. Go ahead. I'm going to begin by apologizing to your court clerk, because apparently my office group, I was called in at the last moment to do these oral arguments, was Denny, who is from the County Counsel's Office of Kern County, and was expected to do this. There was an emergency. They come to our office to come and argue this, and there was apparently a screw-up on our part in filing the document. Well, it's been a long time. It's been a long time. Just briefly, I think the court has focused, and I would differ from counsel's projection or submission to the court, and that is the court below it, I think we look to Judge O'Neill's opinion, which is well-written and eloquently stated, and that is they can't get damages on those claims struck by Judge O'Neill because he found that there was lack of standing as to those claims in totality, not just as to Title III or to Title II. The issue that hangs over this case, as admitted in the county's brief, was whether or not the court overlooked or applied a Title III analysis to their admitted Title II claims. But two minor issues that the Judge O'Neill did find that there was still standing, which was two individual bathrooms on the second floor of Kern Medical Center. Now, the other issue fell under the Rule 8 analysis. And we understand there's an argument about the standing issue, but all we were trying to do is get down once and for all what he was really after, because I don't think that came out in the briefs at all. So I understand your argument. They didn't have standing in the first place, so they don't get to neglect either Title II or Title III. Exactly. And now, are you really saying then Judge O'Neill made a mistake as it relates to Title II? I believe that the county has conceded that in their brief. That is what I thought. I couldn't read it any other way. I've only had a week to live with it. Subject to delivering difference, it being litigated. And subject to whether or not it should be litigated. The county's position, I think, as eloquently stated in their brief, is that there is case law, decisional law, which would allow this court to make that decision based upon the record that does exist in this case. So what is your best case that would suggest that I can only read the complaint and the answer and determine that there's enough here to make a decision on, I mean, nobody even looked at it. Nobody even discovered it. Nobody even asked the plaintiffs about it. And then I'm supposed to make a decision on delivering the indifference. I believe what the county suggested was a line of three cases which would allow this court to do that. That would be the Moreland v. Las Vegas Metro Police Department, the Davis v. Electric Arts case, and the Costs Law v. Wells Fargo cases. Why, given the way it happened here, should I then rely on them? If this had been something which had been discussed or debated or the district court had had some hearing about it, it would seem to me you'd have a good argument. But where the district court on its own came up with this idea, this is all a Title III case so it's over, and nobody even talked about it, why should I do that on appeal? It seems to me they've at least been given a chance to amend as many times as we allow these plaintiffs to amend anyway. I mean, they can go right out and find an expert. The expert goes find something and they're allowed to amend. I mean, everything allows them to amend into a claim. Why would I take this away now without even giving them a chance? And I believe it's because of the way the complaint is framed and on those two issues, whether or not there are any matters that are left to expose deliberate indifference. Well, if they'd have known that they had to concentrate on deliberate indifference, I assure you, they forgot to amend the first time. So I can assure you they haven't given me a lot of evidence to rely upon. But if I had to plead a deliberate indifference claim and the judge had come out and said, where's your deliberate indifference on this complaint, they've said, give me a chance to amend. That is a possibility, a distinct possibility, that could come out of the case. But based on the record that is before this Court, including the extensive declarations of the plaintiff, the plaintiff's expert, personnel at the hospital, the record does seem rather complete on whether or not there could be ever a showing of deliberate indifference, which is otherwise required. Well, they can amend even now, can't they? Under the rules? I mean, I got stuck once. I had a jury trial, and they didn't complete anything that they went to the jury with. And after we got the jury back, the judge let them amend it. I believe they could amend if the case was still there. The case has been, a judgment has been entered, so I don't believe they can amend now. Right. If the Court has any other questions, I'll be happy to entertain them. If not, I'll sit down. Okay. Thank you. I'll give you a minute for a question. Thank you, Your Honors. I want to address just the two issues, the one of standing and the deliberate indifference. The Court, in the making a standing decision, was using delusion and the Supreme Court justification for that, but it was only looking at the potential injury of his return, because, again, the Court had in its mind this was a Title III case from the very beginning. It never acknowledged the fact that there could be actual damages under the federal law, and that would have changed their entire analysis. All of those standing claims would have come out differently if it had acknowledged the mystery brain. That's a noble review for me. I believe it is, and, Your Honor, I don't think the Court can decide on its own the new standing rules and then apply them incorrectly by looking at the wrong law under the ADA. Title II and Title III are distinctly different. You can't conflate them. And we get told that all the time in the trial courts. We have to keep those separate. The standards are different. The conclusions are different. Everything is different. And I think that brings us back to the deliberate indifference issue, because it's not actually a Title III issue at all. It only exists in Title II. And the Swans took an awful lot of time undermining the evidence that we didn't actually put in our summary judgment, but it had come out in the middle of discovery, and they just tended to undercut that in the appellate court. And I think the fact that they spent so much time trying to undermine our evidence shows that this is an issue of fact that needs to be seen by a jury or a minimum by a judge to be able to take a look at it, looking at it as a prior fact rather than a true legal issue. This just can't be decided in this courtroom. And hopefully it doesn't have to come back, but I think it definitely needs to go back to the district court so we can actually address these issues as Congress intended them to be. Thank you. Thank you.
judges: Bea, N.R. Smith, Robreno